```
              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF ARKANSAS
                       FORT SMITH DIVISION


ROBERT L. KALE, M.D.                                      PLAINTIFF

v.                      CASE NO. 2:05-CV-2117

W. RAY JOUETT, ORMAN SIMMONS,
DAVID JACKS, BOBBYE DENNIS,
ANNE BRITTON, SUE CHAMBERS,
TREAT PIERCE, E.ELDON TOMMEY,
ALONZO WILLIAMS, JAMES ZINI,
WARREN DOUGLAS, and J.R. BAKER                           DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendants' Motion to Dismiss (Doc. 2), Plaintiff's response (Doc. 7), and Defendants' reply (Doc. 9). For their motion, Defendants state Plaintiff has failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Specifically, Defendants argue Plaintiff's Complaint under 42 U.S.C. § 1983 for due process violations should be dismissed because Plaintiff has failed to allege a deprivation of any constitutional rights. Defendants further contend they are entitled to judicial immunity. In response, Plaintiff contends his complaint alleges a deprivation of the right to practice medicine without due process in violation of the First, Fifth and Fourteenth Amendments to the Constitution. Plaintiff further argues Defendants are not entitled to judicial immunity because they acted without jurisdiction or authority. Based on the reasons that follow, Defendant's Motion to Dismiss is GRANTED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

**Background**

Plaintiff Robert L. Kale, M.D., ("Dr. Kale") is a licensed physician in the State of Arkansas. Defendants Orman Simmons, David Jacks, Bobbye Dennis, Anne Britton, Sue Chambers, Trent Pierce, C. Eldon Tommey, Alonzo Williams, James Zini, Warren Douglas, and J.R. Baker are members of the Arkansas State Medical Board (the "Board"). Defendant W. Ray Jouett, M.D., ("Dr. Jouett") is chairman of the Board. At a time prior to August 2002, Dr. Kale publicly called for the resignation or removal of Dr. Jouett as chairman of the Board. In August 2002, the Board issued an Emergency Order of Suspension and Notice of Hearing ("Emergency Order") to Dr. Kale pursuant to Ark. Code Ann. § 25-15-201, Ark. Code Ann. § 25-15-211 both of the Administrative Procedure Act, and Ark. Code Ann. § 17-95-410 of the Medical Practices Act. The Board alleged Dr. Kale committed a violation of the Medical Practices Act, specifically, Ark. Code Ann. § 17-95-409(a)(2)(G)[1], exhibiting gross negligence and ignorant malpractice, by violating Regulation 2.4 of the Arkansas Medical Practices Acts and Regulations ("AMPRA").[2]

---

[1] Ark. Code Ann. § 17-95-409(a)(2)(G) states: The words "unprofessional conduct" as used in the Arkansas Medical Practices Act...are declared to mean grossly negligent or ignorant malpractice.

[2] Regulation 2.4 states:

    The Arkansas Medical Practices Act authorizes the Arkansas State Medical Board to revoke or suspend the license issued by the Board to practice medicine if the holder thereof has been

The Emergency Order alleges Dr. Kale over-prescribed up to seven medications to 12 individuals during a period of time from January 1997 to July 2002. Paragraph XIV states:

> Pursuant to the Administrative Procedure Act, Ark. Code Ann. § 25-15-211(c), and upon an affirmative vote of the majority of the Arkansas State Medical Board, the Board finds that the acts of Robert L. Kale, M.D., described hereinabove, endangers the public health, safety and welfare; and therefore the license to practice medicine in the State of Arkansas of Robert L. Kale, M.D. is suspended pending a disciplinary hearing in this matter or further orders of the board.

The Emergency Order further states:

> Wherefore, it is Considered, Ordered, and Adjudged that the license to practice medicine, as issued by the State of Arkansas to Robert L. Kale, M.D., is suspended, as to the authorization to prescribe schedule medications, on an emergency basis, pending a disciplinary hearing or further orders of the Board.

Dr. Kale contends he was ordered to surrender his DEA permit upon issuance of the Emergency Order. On August 28, 2002, the Board amended the Emergency Order deleting paragraph V of the original order, which pertained to patient "T.B.", and adding additional

---

found guilty of grossly negligent or ignorant malpractice.
   "Malpractice" includes any professional misconduct, unreasonable lack of skill or fidelity in professional duties, evil practice, or illegal or immoral conduct in the practice of medicine and surgery. It shall include, among other things, but not limited to....the prescribing of excessive amount of controlled substances to a patient including the writing of an excessive number of prescriptions for an addicting or potentially harmful drug to a patient.

violations of the Medical Practices Act.

The Board conducted a hearing on June 6, 2003, and found Dr. Kale to not be in violation of Regulation 2.4 of the AMPRA which relates to the over-prescribing of scheduled medication, but in violation of Regulation 19 which relates to pain management programs. The Board lifted the previous Emergency Order prohibiting the prescribing of scheduled medication and proscribed actions for Dr. Kale to obtain a new DEA permit.[3] Shortly after the Emergency Order was issued, Dr. Jouett was interviewed by a local television station in his capacity as chairman of the Board in which he stated: "The doctor is causing this individual to become dependent. That's part of it. The second part of it is that there are a great number of drug seekers that utilize the physicians to get drugs and then sell them on the street." Dr. Kale contends this statement was a reference to him and caused harm to his good name and reputation.

Defendants contend that Dr. Kale has alleged no constitutional right violation, that they are entitled to qualified immunity, and that Dr. Kale's claims are barred by the abstention doctrine. Defendants further contend Dr. Kale's license to practice medicine was not suspended, only limited in his ability to prescribe certain medications. Dr. Kale contends he was entitled to notice and an opportunity to be heard before the Emergency Order was issued and his license suspended. Dr. Kale further contends he was entitled

---

[3]Dr. Kale has appealed that decision to the Circuit Court of Sebastian County.

to due process regarding Dr. Jouett's statement. Dr. Kale finally contends the Emergency Order was issued in retaliation for his criticisms of Dr. Jouett.

**Discussion**

A motion to dismiss should be granted when, assuming the complaint's factual allegations are true, it appears beyond doubt that the plaintiff cannot prove any set of facts supporting the claim. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1062 (8th Cir. 2005). If the court relies on matters outside the pleadings, the motion to dismiss shall be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b). But the court may consider "some materials that are part of the public record or do not contradict the complaint," *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.), *cert denied*, 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999), as well as materials that are "necessarily embraced by the pleadings." *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F.Supp. 1148, 1152 (D.Minn. 1997). In our analysis, we consider the Emergency Order and the Board's order regarding the June 6, 2003 hearing as public records and because they are "necessarily embraced by the pleadings."

To establish a claim under 42 U.S.C. § 1983, Dr. Kale must first show a deprivation of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *See Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997). Second, he must prove that the state's deprivation of that interest was done

without due process. *Krentz v. Roberson Fire Prot. Dist.*, 228 F.3d 897, 902 (8th Cir. 2000).

Dr. Kale contends he has a property interest in practicing medicine and this is not contested by the Defendants. A physician's right to practice medicine is a property right deserving constitutional protection. *See Hake v. Ark. State Medical Board*, 237 Ark. 506, 374 S.W.2d 173 (1964); *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). Dr. Kale is a physician licensed by the State of Arkansas. As a licensed physician, he is subject to the rules and regulations of the Arkansas Medical Practices Act codified at Ark. Code Ann. § 17-95-201 *et seq*, and under the authority of the Arkansas State Medical Board.

The Arkansas State Medical Board is a state agency authorized by the Arkansas Legislature to make and adopt all rules, regulations, and bylaws regarding the practice of medicine and to promulgate and put such rules and regulations as are necessary into effect. *See* Ark. Code Ann. § 17-95-303. This includes the power to suspend or revoke medical licenses within the State of Arkansas. *See* Ark. Code Ann. § 17-95-409. The procedural format for the Board's actions concerning the license suspension of a physician is governed by the Arkansas Administrative Procedures Act codified at Ark. Code Ann. § 25-15-201 *et seq.* Ark. Code Ann. § 25-15-211(c) provides:

> No revocation, suspension annulment, or withdrawal of any license is lawful unless the agency gives notice by mail to the licensee of facts or conduct warranting the intended action and unless the licensee is given an opportunity to show compliance with all lawful

> requirements for the retention of the license.
>
> If the agency finds that public health, safety, or welfare imperatively requires emergency action and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action, which proceedings shall be promptly instituted and determined.

Dr. Kale contends that this section of the Arkansas Code guarantees the procedural protection granted under Ark. Code Ann. § 17-95-410 which requires at least 30 days written notice before a physician's license can be suspended or revoked, even temporarily. We disagree for Ark. Code Ann. § 17-95-410(b) & (c) provides that the Board shall review any complaint against a licensee and issue a written order and notice of hearing to the licensee by mail. At the time of the hearing, the Board shall receive evidence and shall accord the licensee a full and fair opportunity to be heard in his defense. *See* Ark. Code Ann. § 17-95-410(d). If the accused is found guilty, the Board may revoke or suspend his license. *See* Ark. Code Ann. § 17-95-410(e)(3). Section 17-95-410 and the first sentence of Section 25-15-211(c) both provide for a final determination as to a suspension or revocation of a license. The second sentence of Section 25-15-211(c) provides for a summary suspension of a license. If a summary suspension and a final suspension required the same procedural notice requirements, there would be no need for the Legislature to have adopted the second sentence. The Legislature has specifically provided for the summary suspension when an agency finds that public health, safety, or welfare imperatively requires emergency action and promptly institutes proceedings subsequent to the summary suspension. To

accept Dr. Kale's contention would be tantamount to declaring an act of the Legislature a nullity.

Dr. Kale next contends that even if the Board has the lawful authority to suspend a physician without a hearing in emergency circumstances, they can not do so for an allegation of grossly ignorant or negligent malpractice under Ark. Code Ann. § 17-95-409(2)(G). Dr. Kale argues the Board must have the testimony of an expert witness to support the allegation and cites *Hollabaugh v. Arkansas State Medical Board*, 43 Ark. App. 83, 861 S.W.2d 317 (1993) for support. Dr. Kale's reliance on *Hollabaugh* is misplaced. In *Hollabaugh*, the doctor's license was suspended by the Board for gross negligence or ignorant malpractice following a hearing. On appeal, the *Hollabaugh* court could not affirm the suspension without expert testimony establishing the standard of care to which Dr. Hollabaugh was to be held and whether she violated that standard of care. The evidentiary issue in *Hollabaugh* was not about a summary suspension of a license. As stated previously, the Board is only required to find that public health, safety, or welfare imperatively requires emergency action and incorporates a finding to that effect in its order. *See* Ark. Code Ann. 25-15-211(c); *see also Arkansas State Medical Board v. Leonard*, 267 Ark. 61, 590 S.W.2d 849 (1979)(decision under prior law)("The Board [] has the authority to summarily suspend a license pending a hearing if it finds that emergency action is required and 'incorporates a finding to that effect in its order.'") In the Emergency Order, the Board alleged Dr. Kale to have over-prescribed at least one and as many as seven medications to 11 individuals as

recently as July 2002. The Board stated in paragraph XIV that the actions of Dr. Kale "endanger[ed] the public health, safety and welfare." We find the Board acted within its authority under Arkansas law to issue the Emergency Order.

Dr. Kale further contends defendant Dr. Jouett, as chairman of the Arkansas Medical Board, deprived him of a liberty interest in his reputation and good name without due process.[4] Injury to reputation alone is not a liberty interest protected under the Fourteenth Amendment. *Siegert v. Gilley*, 500 U.S. 226, 233-34, 111 S.C.t 1789, 114 L.Ed.2d 277 (1991). Accordingly, the Eighth Circuit has limited this claim to cases in which a public employer terminated an employee and published reasons for the discharge that seriously damaged the employee's standing in the community or foreclosed other employment opportunities. *See Putnam v. Keller*, 332 F.3d 541, 546 (8th Cir. 2003); *Speer v. City of Wynne*, 276 F.3d 980, 984 (8th Cir. 2002); *accord Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1153-54 (10th Cir. 2001). The Eighth Circuit has further limited this claim to government accusations "so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Allen v. City of Pocahontas*, 340 F.3d 551, 556 (8th Cir. 2003)(quotation omitted),

---

[4]In his response, Dr. Kale characterizes the claim against Dr. Jouett as a state claim for defamation for which he argues diversity jurisdiction exists pursuant to 28 U.S.C. 1332. Diversity jurisdiction exists, in part, between people of different states. *See* 28 U.S.C. 1332. As Dr. Kale states in his complaint, he and Dr. Jouett are citizens and residents of Arkansas. Therefore, diversity jurisdiction does not exist. And as Dr. Kale has not established a 42 U.S.C. § 1983 claim, we would not exercise jurisdiction over any state law claim under 28 U.S.C. § 1367.

*cert. denied*, 540 U.S. 1182, 124 S.Ct. 1420, 158 L.Ed.2d 85 (2004); *see Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845 (8th Cir. 2002)(allegations of "dishonesty, immorality, criminality, racism, and the like")(quotation omitted). Here, Dr. Kale is not a terminated public employee, nor has he suffered a comparable injury such as a revocation of his license.

Dr. Kale finally contends the Board's actions were in retaliation for his criticisms of Dr. Jouett and in calling for his resignation. To state a First Amendment claim under 42 U.S.C. § 1983, Dr. Kale must show his speech concerned matters protected by the First Amendment and the protected speech was a substantial factor in the Board's decision. *See O'Sullivan v. Minnesota*, 191 F.3d 965 (8th Cir. 1999). Dr. Kale's complaint only states that he publicly called for the resignation or removal of Dr. Jouett as chairman of the Board at a time prior to August 8, 2002, for acting on behalf of insurance companies and big corporations rather than acting on behalf of individual patients and patient rights. (Doc. 1, Dr. Kale's Complaint, ¶ 6). Dr. Kale has alleged no facts that any members of the Board, including Dr. Jouett, were aware of the criticisms. Even if the members of the Board were aware of Dr. Kale's criticism, that was not the stated reason the Board issued the Emergency Order. Instead, it was that the Board found a danger to public health, safety and welfare in the over-prescribing of medications by Dr. Kale. In any event, the Board's order following the June 6, 2003, hearing lifting the Emergency Order removes any further inference of causation between his speech and the decision to issue the Emergency Order.

## Conclusion

Dr. Kale's Complaint fails to allege a due process claim in violation of his constitutional rights as a matter of law, fails to state a due process claim against Dr. Jouett as a matter of law, and fails to state a First Amendment violation as a matter of law. Having reached these conclusions, we need not resolve whether the Board was entitled to immunity on the claims.

IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED that Defendants' Motion to Dismiss is GRANTED. Plaintiff's Complaint is DISMISSED WITH PREJUDICE. All parties are to bear their own fees and costs.

IT IS SO ORDERED this 16th day of March, 2006.

/s/Robert T. Dawson
Robert T. Dawson
United States District Judge